ROBERT FROMER *v.* TWO HUNDRED POST
ASSOCIATES ET AL.
(10786)

DALY, LAVERY and LANDAU, Js.

Argued November 2, 1992—decision released September 14, 1993

*Robert Fromer,* pro se, the appellant (plaintiff).

*Mary E. Driscoll,* with whom, on the brief, was *Edward B. O'Connell,* for the appellee (substitute defendant Federal Deposit Insurance Corporation, receiver of the defendant Saybrook Bank and Trust).

LAVERY, J. This is an appeal from the dismissal by the trial court of an appeal by the plaintiff, an abutting owner of a condominium, from the granting by the defendant city of New London conservation commission-inland wetlands agency (commission) of a second extension of an inland wetlands permit to the developer, the defendant Two Hundred Post Associates, doing business as Georgetown Associates (Georgetown).[1] We affirm the judgment of the trial court.

The plaintiff claims that the commission did not have the power to grant a second extension, that an inland wetlands permit does not run with the land, and that estoppel and tolling are not appropriate vehicles to uphold the commission's decision.

The pertinent facts are as follows: In October, 1987, Georgetown applied to the commission for a permit to conduct a regulated activity, the building of a condominium project, on its property. On December 21, 1987, the permit was granted subject to the developer's obtaining all necessary zoning permits and meeting various other conditions.[2] The plaintiff, an

---

[1] The defendant Saybrook Bank and Trust Company is the successor in title of Saybrook Bank. The Federal Deposit Insurance Corporation is the receiver of the defendant Georgetown.

[2] The conditions on which the permit was granted in December, 1987, were listed in a letter, dated December 22, 1987, from James R. McDermott, technical advisor to the New London conservation commission to Arnold Voloshin of Georgetown. That letter stated:

owner of a condominium unit located on adjoining property, appealed to the trial court from the decision granting the permit. That appeal was dismissed on May 5, 1988.

On April 11, 1988, Georgetown applied to the New London planning and zoning commission for a site plan approval and a coastal site plan approval for a fifty unit residential condominium project. On June 29, 1988, after extensive hearings, that application was approved. The plaintiff in this case also appealed to the trial court from the decision granting the site plan approvals. Judgment in that case was rendered on February 15, 1990, for the defendant. The trial court found that there was ample evidence in the record to justify the site plan approvals.

"Dear Mr. Voloshin:

"The City of New London Conservation Commission/Inland Wetlands Agency voted at its meeting of December 21, 1987 to approve the application of your Georgetown Square Condominium Project as depicted in your plans revised through December 21, 1987 and to give this application a Class B classification, such approval to be contingent upon the following:

"1. Submission to the Commission of single limit combined public liability insurance and property damage insurance, naming the City of New London as an additional insured, in an amount not less that $1,000,000.00 for injuries, including wrongful death and property damage; such insurance to remain valid for a period of one year after the completion of the project.

"2. Submission to the Commission of a performance bond in an amount of $200,000.00 unconditionally guaranteeing the installation of the entire storm water drainage system as designed by the Engineer and approved by the Commission; such bond to remain in effect until such drainage system is satisfactorily completed and accepted by the Commission or its agent.

"3. If any activity authorized by this permit also needs zoning or subdivision approval, special permit, variance, or special exception; no work pursuant to the wetland permit is authorized until such approval is issued.

"4. If no significant activity has commenced within one year of issuance of this permit, it will become void.

Yours truly,

James R. McDermott, P.E.
Technical Advisor"

In December, 1988, the commission granted the defendant Georgetown a one year extension of the inland wetlands permit. On November 13, 1989, prior to the expiration of the permit, Georgetown sought an additional one year extension by letter. The commission did not act on the reply until January 8, 1990, when it granted the extension retroactive to December 22, 1989, the date on which the first extension expired. This appeal is taken by the plaintiff from the granting of the second extension. Subsequent to the commission's decision granting the second extension, Georgetown conveyed the subject property to the defendant Saybrook Bank and Trust Company (Saybrook Bank). The trial court granted Saybrook Bank's motion to be made a defendant and, after hearing the case, found in favor of the commission and Saybrook Bank. In December, 1991, after the trial court's decision, the Federal Deposit Insurance Corporation (FDIC) became the receiver of Saybrook Bank. The FDIC's motion to be made a substitute defendant was granted by this court.

We hold (1) that the permit to conduct a regulated activity runs with the land and not with the applicant, and (2) that, on the facts of this case, in which a valid permit was issued to conduct a regulated activity within a specified time period and appeals from the granting of the necessary permits to conduct that activity were not resolved within the time period during which the activity was required to begin, that time period is tolled until all litigation is completed.

The plaintiff argues that an inland wetlands permit is a personal permit attached to the individual applicant that does not attach to the land and follow the title. We disagree. A review of the applicable statutes shows that the permit process is concerned with the property and not the applicant. In enacting ordinances and regulations and in granting, denying or limiting any per-

mit for a regulated activity, an inland wetlands agency is required to consider those factors set forth in General Statutes §§ 22a-41, 22a-42a (d) and 22a-42e.[3]

[3] General Statutes § 22a-41 provides: "FACTORS FOR CONSIDERATION OF COMMISSIONER. FINDING OF NO FEASIBLE OR PRUDENT ALTERNATIVE. (a) In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability or unsuitability of such activity to the area for which it is proposed.

"(b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

General Statutes § 22a-42a (d) provides: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in section 22a-41, and such agency shall state upon the record the reason for its decision. In granting a permit the inland wetlands agency may grant the application as filed or grant it upon such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections 22a-36 to 22a-45, inclusive. No person shall conduct any regulated activity within an inland wetland or watercourse which requires zoning or subdivision approval without first having obtained a valid certificate of zoning or subdivision approval, special permit, special exception or variance or other documentation establishing that the proposal complies with the zoning or subdivision requirements adopted by the municipality pursuant to chapters 124 to 126, inclusive, or any special act. Any permit issued under this section shall be valid for at least two years and the agency may provide for the permit to be valid for up to five years, provided the permittee may apply for and the agency may, at its discretion, grant a renewal of such permit for successive periods of time not to exceed an additional five years. The agency may suspend or revoke a permit if it finds after giving notice to the permittee of the facts or conduct which warrant the intended action and after a hearing at which the permittee is given an opportunity to show compliance with

A permit is issued or denied on the basis of conditions relating to the land such as the topography, soil type, and the nature, extent, and effect of the proposed activity on the land. The factors in the statutes that can be considered by the inland wetlands agencies pertain only to the land and not to the applicants or owners.

Our Supreme Court has recognized the legal principle that a zoning variance runs with the land and not with the property owner. In *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 239, 303 A.2d 743 (1972), the court said: "By its very definition, a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners. 2 Anderson, American Law of Zoning § 14.29, p. 662." See T. Tondro, Connecti-

the requirements for retention of the permit, that the applicant has not complied with the conditions or limitations set forth in the permit or has exceeded the scope of the work as set forth in the application. The applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision and the agency shall cause notice of their order in issuance, denial, revocation or suspension of a permit to be published in a newspaper having a general circulation in the town wherein the wetland and watercourse lies. In any case in which such notice is not published within such fifteen-day period, the applicant may provide for the publication of such notice within ten days thereafter."

General Statutes § 22a-42e provides: "APPLICATION FILED PRIOR TO CHANGE IN INLAND WETLANDS REGULATIONS NOT REQUIRED TO COMPLY WITH CHANGE. EXCEPTIONS. An application filed with an inland wetlands agency which is in conformance with the applicable inland wetlands regulations as of the date of the decision of such agency with respect to such application shall not be required thereafter to comply with any change in inland wetlands regulations, including changes to setbacks and buffers, taking effect on or after the date of such decision and any appeal from the decision of such agency with respect to such application shall not be dismissed by the superior court on the grounds that such a change has taken effect on or after the date of such decision. The provisions of this section shall not be construed to apply (1) to the establishment, amendment or change of boundaries of inland wetlands or watercourses or (2) to any change in regulations necessary to make such regulations consistent with the provisions of this chapter as of the date or such decision."

cut Land Use Regulation (2d Ed. 1992), p. 124. Courts in other jurisdictions have recognized that conditional use permits run with the land and not with the owner. See *County of Imperial* v. *McDougal,* 19 Cal. 3d 505, 564 P.2d 14, 138 Cal. Rptr. 472 (1977); *Northpointe Plaza* v. *Rochester,* 457 N.W.2d 398, 401 (Minn. App. 1990).

We hold that an inland wetlands permit is concerned solely with the property to be regulated, and that the change of ownership does not affect the validity of the permit.

The plaintiff next claims that the permit has expired by the passage of time and that the commission had no authority to grant the second extension from which this appeal arises. Georgetown first applied for the inland wetlands permit, and it was granted, in December, 1987, and the plaintiff appealed. The wetlands permit was granted subject to zoning approval. In April, 1988, Georgetown applied simultaneously for zoning site plan approval and coastal area management site plan approval, which the New London planning and zoning commission granted. The plaintiff immediately appealed from that decision also. In December, 1988, the commission granted a one year extension of the wetlands permit, and, in January, 1990, the commission granted a second extension retroactive to December, 1989, from which the present appeal was taken. The appeal from the granting of the inland wetlands permit was dismissed in May, 1988, and the appeal from the site plan approvals was dismissed on February 15, 1990. The defendants have been involved with the present application for an inland wetlands permit since 1987 because of the appeals brought by a single plaintiff.

The plaintiff argues that since there was no stay in effect, the defendant Georgetown, and its successors,

could have begun construction. We, however, agree with the court in *McGavin* v. *Zoning Board of Appeals*, 26 Conn. Sup. 251, 255, 217 A.2d 229 (1965), that to have begun construction during the pendency of the appeal might have been considered "reckless conduct" on the part of the landowner. This is especially true in this case because the wetlands permit was conditioned on obtaining the necessary zoning permits, and there were two appeals from the initial granting of the permits. If the defendant applicants had disturbed the wetlands and either of the appeals were lost so as to void the wetlands permit, they would have had to restore the wetlands.[4]

The plaintiff further argues that the regulation in effect at the time of the original granting of the permit[5] controls, allowing only one extension, rather than the one that went into effect on June 15, 1990,[6] which

[4] General Statutes § 22a-44 (b), which concerns penalties and court orders in connection with violations of the Inland Wetlands and Watercourses Act, provides in pertinent part: "The superior court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action. The moneys collected pursuant to this section shall be used by the commissioner of environmental protection, to restore the affected wetlands or watercourses to their condition prior to the violation, wherever possible."

[5] The regulation, cited by the plaintiff, that was in effect at the time the original permit was granted, § 8, of the New London inland wetlands regulations provided: "8.1 If no significant activity has commenced within one year of the issuance of permit, said permit is void.

"8.2 The Commission may extend a permit for an additional year upon written request from the permit holder. Such request shall be considered by the Commission at a regularly scheduled Commission meeting and acted upon with[in] thirty days."

[6] The new regulation, § 12.7, which became effective on June 15, 1990, provides: "The duration of any permit shall be for one (1) year unless other-

allows unlimited extensions. He bases his claim on General Statutes § 22a-42e. See footnote 3.

The obvious remedy is to toll the one year duration of the permit until all appeals are decided. See T. Tondro, supra, p. 521. "Cases from other states hold that an appeal from the granting of an issuance or permit is a defense to the fact that the successful applicant did not use the permit or variance within the time period otherwise provided by law." R. Fuller, Land Use Law and Practice (1993) § 24.10, p. 453.

"The Massachusetts Supreme Court in *Belfer* v. *Building Commissioner of Boston* [363 Mass. 439, 294 N.E.2d 857 (1973)] held that where zoning variances were granted and could not as a practical matter be used during the pendency of an appeal by persons challenging the granting of the variances, that the filing of the appeal from the granting of the variance tolled the running of the two-year period during which variances had to be used and building permits had to be issued. The court concluded that such a rule was essential, stating: 'Otherwise a variance which was lawfully awarded can be frustrated by the delay inherent in an appeal. Unless an appeal tolls the time period, many variances would be meaningless.' [Id.]" R. Fuller, supra; see also *Smith* v. *Board of Appeals,* 366 Mass. 197, 316 N.E.2d 501 (1974).

In *Tantimonaco* v. *Zoning Board of Johnston,* 102 R.I. 594, 599–600, 232 A.2d 385 (1967), the Supreme Court

wise specified in the permit or extension by the Commission. Permit extension shall be at the discretion of the Commission and may be subject to the calling of an additional public hearing. All permits shall expire upon the completion of the acts specified herein."

We note that General Statutes § 22a-42a (d) provides in pertinent part: "Any permit issued under this section shall be valid for at least two years and the agency may provide for the permit to be valid for up to five years, provided the permittee may apply for and the agency may, at its discretion, grant a renewal of such permit for successive periods of time not to exceed an additional five years. . . ." See footnote 3.

of Rhode Island rejected a contention by adjacent land-owners that the time for commencing construction under a building permit should continue to run after they initiated an appeal that challenged the zoning permit allowing the construction of a gas station. The court said: "As heretofore noted, petitioners challenged the validity of that permit by seeking a review of the board's decision with the filing of their petition for certiorari on June 8, 1965. Although the filing of such a petition does not act as a stay, G. L. 1956, § 45-24-20, common prudence understandably acts as a brake against incurring obligations, the benefits of which would be cancelled by an adverse decision of this court. Apart from the question as it may be affected by a change in the zoning regulations, we think it clear that the requirement of activating a permit set forth in an ordinance does not apply during such time as the legality of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof." Id.

In *Cranston* v. *Carpionato,* 115 R.I. 63, 340 A.2d 134 (1975), an individual challenged the validity of certain building permits, and on appeal contended that the permits were revoked by a zoning ordinance that required that construction be commenced within ninety days of the date of the permit. The Supreme Court of Rhode Island rejected this argument, stating: "Although we agree with the city that *Tantimonaco* v. *Zoning Board* [*of Johnston*], supra, is factually distinguishable from this case, we remain unconvinced that its reasoning is inapplicable here. In that case, we recognized the unlikelihood that a man of common prudence would incur obligations the benefits of which might be cancelled by an adverse decision of this court, and we consequently concluded that an ordinance requiring the activation of a building permit within a fixed period ought not to apply '. . . during such time as the legal-

ity of a permit is open to question by reason of litigation amounting to an appeal from the issuance thereof. [Id., 600].' " *Cranston* v. *Carpionato, supra,* 67. The Rhode Island Supreme Court reasoned that since the validity of the building permits would be uncertain during the period of litigation, that time should be excluded in computing the time period within which construction was to commence.

In *Presault* v. *Wheel,* 132 Vt. 247, 253–54, 315 A.2d 244 (1974), the Vermont Supreme Court stated: "We conclude that the more soundly reasoned cases from other jurisdictions support the proposition that where a valid permit is issued for a specified period, and where actual construction is delayed by litigation, involving parties who have standing to oppose construction, past that time, a permittee otherwise proceeding in good faith is entitled to reissuance of that permit, even where the zoning was meanwhile changed so that the project is nonconforming." "For this Court to hold that a developer, proceeding as expeditiously as possible, must be denied reissuance of the permit he first applied for and received solely because his application for a second essential permit resulted in litigation of more than a year's duration would go beyond the desired and worthwhile goal of controlling development. Such a holding would make development a pure gamble; success would depend on the whim of adversaries to litigate or not. This result would contravene our announced policy that a good faith developer should be able to proceed with assurance." Id., 255.

The plaintiff argues that we should adopt the reasoning of the trial court in *ASL Associates* v. *Proch,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 370080 (December 12, 1990), which rejected the tolling of the time limitations

on permits saying that General Statutes (Rev. to 1989) § 8-8[7] provides for a restraining order, and that, had good cause been shown, an order tolling the nine month period could have been issued. Id., 30. We reject this reasoning because there is a myriad of agencies from which many property owners must obtain approval, and, in many instances, one permit is dependent on another, as in this case. We note, for example, that permits or approval are needed with regard to zone changes, special permits, variances, inland wetlands, historic districts, site plans, coastal area management, subdivisions, and water protection ordinances. In the last six years, the method of appeal under the Inland Wetlands Act has changed three times.[8]

There is no legislative history to § 8-8 as originally passed in 1925 before the advent of the myriad of land use regulatory bodies that exist today. We hold that the statute provides in cases covered by § 8-8 a means for an appellant to stay any action on the approved application until the appeal is decided.[9] Since there is a void in the statutory scheme for the protection of the appellee developer in this case, we hold that on the facts of this case the time limitations on the permit are tolled until this litigation is terminated.

---

[7] General Statutes (Rev. to 1989) § 8-8 (b) provided in pertinent part: "The appeal shall state the reasons upon which it has been predicated and shall not stay proceedings upon the decision appealed from, but the court to which such appeal is returnable may, on application, on notice to the board and on cause shown, grant a restraining order." The language regarding a restraining order has since been placed under subsection (g) of § 8-8, which provides: "The appeal shall state the reasons on which it has been predicated and shall not stay proceedings on the decision appealed from. However, the court to which the appeal is returnable may grant a restraining order, on application, and after notice to the board and cause shown."

[8] General Statutes § 22a-43 governs appeals under the Inland Wetlands and Watercourses Act. Section 22a-43 has been amended three times over the past six years. See Public Acts 1991, No. 91-136, Public Acts 1989, No. 89-356 and Public Acts 1987, No. 87-338.

[9] See T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), p. 522.

In this case, the defendant Georgetown and its successors, the Saybrook Bank and the FDIC, complied with all the applicable regulations in obtaining their permits, and the plaintiff exercised his legal right opposing the granting of the permits before the appropriate boards and the courts. The defendant Georgetown and its successors prevailed both before the regulating agencies and in the courts. Yet, six years later, the plaintiff is before this court arguing that because of the passage of time the inland wetlands permit has expired.

The regulatory process is not designed to be a spider's web, snaring one who follows all the regulations and statutes, obtains all the necessary permits, and successfully defends a series of appeals, but then loses his right to proceed because the passage of time has caused the permits to expire.

The judgment is affirmed.

In this opinion the other judges concurred.