******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MEGAN BOCHANIS ET AL. *v.* FRANCES
SWEENEY ET AL.
(AC 34756)

DiPentima, C. J., and Keller and Dupont, Js.

*Argued November 18, 2013—officially released March 11, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*Thomas J. Weihing*, for the appellants (plaintiffs).

*John F. Fallon*, for the appellee (named defendant).

*Barbara M. Schellenberg*, with whom, on the brief,
was *Ari J. Hoffman*, for the appellees (defendant Town
of Fairfield Conservation Commission et al.).

*Opinion*

DUPONT, J. The plaintiffs, Megan Bochanis, John Bochanis, John McMillan, and Lori McMillan, appeal from the judgment of the trial court rendered after it had granted the motions to dismiss filed by the defendants, Frances Sweeney, Kevin Sweeney, the Fairfield Conservation Commission (commission) and the Fairfield Zoning Board of Appeals (board).[1] This case is another in the litany of cases involving "neighborly" disputes between landowners as to the usage of their abutting real estate. The plaintiffs claim that the court erred in concluding that: (1) they failed to exhaust their administrative remedies by failing to directly appeal from the granting of an inland wetlands permit to the defendants in 2006, which, accordingly, deprived the court of subject matter jurisdiction; and (2) the wetlands permit issued to the defendants properly was extended.[2] With respect to the plaintiffs' second argument that the permit improperly was extended, the plaintiffs specifically claim that: (1) the court's reliance on General Statutes (Supp. 2010) § 22a-42a (g)[3] was misplaced and that notice of the permit extension was required before the extension could be granted; and (2) the expiration date of the permit was not tolled because of the defendants appeal from the denial of their two requested zoning variances. We conclude that the plaintiffs' failure to exhaust their administrative remedies deprived the court of subject matter jurisdiction to address the validity of the defendants' wetlands permit. To the extent that the plaintiffs claim the permit was improperly extended as a procedural matter, we conclude that the permit properly was renewed and extended in all respects.[4] Accordingly, we affirm the judgment of the court.

The following facts, as found by the trial court, are relevant to the resolution of the plaintiffs' appeal. Megan Bochanis and John Bochanis are the owners of the property located at 963 South Pine Creek Road, where they reside.[5] This property abuts a vacant parcel of land located at 995 South Pine Creek Road (property) owned by the defendants. On October 4, 2006, Frances Sweeney submitted an inland wetlands permit application to the commission in order to construct a single family residence within a regulated area on the property. After receiving the application, the commission did not hold a public hearing on the application.[6] On December 7, 2006, the commission voted to conditionally approve the application, effective December 15, 2006, with an expiration date of December 15, 2008. Notice of the commission's decision was published in the Fairfield Citizen News.[7] No appeal by the plaintiffs was taken from the approval of the permit.

After the commission approved the wetlands permit, the defendants sought variances from the board regarding two separate provisions of the Fairfield Zoning Reg-

ulations. The defendants' application was heard by the board on July 5, 2007, and, after the hearing, the board denied the defendants' variance requests. The defendants appealed that decision to the Superior Court, which sustained the appeal on July 10, 2009, concluding that the defendants had met their burden of demonstrating that the denial of their application for two variances was arbitrary, illegal, and an abuse of discretion. Megan Bochanis and John Bochanis, as intervening parties in that action, then filed a petition in this court for certification to appeal from the Superior Court's judgment sustaining the defendants' appeal, which this court denied on October 14, 2009. Thereafter, counsel for the defendants wrote to the commission alerting them to the fact that certification had been denied. On November 16, 2009, the commission sent the defendants' counsel a letter, informing him that the defendants' permit had been extended to October 14, 2011 "[b]ased upon past practice on similar permit expiration issues."

The plaintiffs commenced the present action on April 22, 2010, and thereafter filed an amended complaint on October 21, 2010, in which they claimed that the permit issued by the commission in December, 2006, was invalid because it had not been extended properly by vote of the commission. The plaintiffs requested money damages and sought an injunction prohibiting the defendants from constructing a residence on the property without obtaining proper zoning and wetlands approval. The board and the commission, joined by the defendants, filed motions to dismiss the plaintiffs' complaint on the ground that the plaintiffs had failed to exhaust available administrative remedies pursuant to General Statutes § 22a-43 and that, therefore, the court lacked subject matter jurisdiction to hear the case pursuant to Practice Book § 10-33.[8] The court granted the motions to dismiss on May 30, 2012.[9] In dismissing the plaintiffs' action for lack of subject matter jurisdiction, the court concluded that, contrary to the plaintiffs' contentions, neither actual nor constructive notice of the permit extension was required by § 22a-42a (g) and that the permit had been extended both by § 22a-42a (g) and due to the defendants' appeal from the board's denial of the defendants' requested variances. This appeal followed.

On appeal, the plaintiffs claim that the court erroneously concluded that: (1) it lacked subject matter jurisdiction due to their failure to exhaust their administrative remedies by directly appealing the 2006 wetlands permit approval; and (2) the permit issued to the defendants properly was renewed. With respect to the plaintiffs' second argument, the plaintiffs specifically assert that: (1) the court's reliance on § 22a-42a (g) was misplaced and that notice of the permit extension was required before the extension was granted; and (2) the expiration date of the permit was not tolled because of the defendants' appeal from the denial of

the requested variances. We disagree with the plaintiffs.

We begin our analysis with the appropriate standard of review. "The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010). "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiffs'] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Gerardi* v. *Bridgeport*, 99 Conn. App. 315, 317, 913 A.2d 1076 (2007).

## I

The plaintiffs first claim that the court erroneously concluded that their failure to exhaust their administrative remedies by failing to directly appeal from the granting of the permit in 2006 pursuant to § 22a-43 (a) deprived the court of subject matter jurisdiction. Specifically, the plaintiffs contend that the exhaustion doctrine is inapplicable to them because injunctive relief is necessary to prevent immediate and irreparable harm.[10] We disagree.

"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. . . . [B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiffs'] claim." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 563, 821 A.2d 725 (2003).

"There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal from a planning commission's decision . . . . Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed. . . . [W]hen a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." (Citations omitted; internal quotation marks omitted.) *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, 122 Conn. App. 751, 758–59, 998 A.2d 1256 (2010). Moreover, as a general rule, a party's failure to appeal from the action of a municipal land use authority generally renders that action final such that corrective action is no longer subject to review by a court. *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992).

With these general principles in mind, we turn now to the relevant statutory provisions. Section 22a-43 (a) provides in relevant part: "[A]ny person owning or occupying land which abuts any portion of land within, or is within a radius of ninety feet of, the wetland or watercourse involved in any regulation, order, decision or action made pursuant to [certain] sections may, within the time specified in subsection (b) of section 8-8, from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located . . . ." General Statutes § 8-8 (b)[11] provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section . . . any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . . The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. . . ."

This court's decision in *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 122 Conn. App. 751, provides guidance for our analysis of the plaintiffs' first claim. In *Caltabiano*, the plaintiffs appealed to the Superior Court from decisions made by the local zoning

board of appeals and zoning commission granting the defendant's requested variances and amendments to zoning regulations pursuant to § 8-8 (b). Id., 755. The court dismissed those appeals and the plaintiffs failed to file a petition for certification to appeal to this court pursuant to § 8-8 (o).[12] Id. The plaintiffs thereafter commenced a separate civil action seeking injunctive relief in which the first two counts attacked the decisions of the board and zoning commission. Id., 756. The defendant moved to dismiss counts one and two, claiming that the court lacked subject matter jurisdiction because the plaintiffs had failed to exhaust their administrative remedies. Id. The court granted the defendant's motion to dismiss counts one and two in their entirety. Id., 756–57. On appeal to this court, the plaintiffs claimed that they had exhausted their administrative remedies by appealing from the original decisions of the board and zoning commission and that therefore, this court could hear their civil action seeking injunctive relief. Id., 757. The plaintiffs went on to claim that even if they had failed to exhaust their administrative remedies, they fell within an exception to the exhaustion doctrine because it would have been futile to appeal further from the court's decision. Id. This court found that the plaintiffs' arguments underlying their claim of futility should have been raised in a direct appeal from the action of the zoning board and that therefore, the plaintiffs did not fall within the futility exception to the exhaustion doctrine. Id., 760. We went on to note that although the plaintiffs had not exhausted their administrative remedies, "a collateral attack may be justified in exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy . . . ." (Internal quotation marks omitted.) Id., 762. We determined that the plaintiffs had failed to make such a showing and that therefore, the trial court properly held that it lacked subject matter jurisdiction. Id., 762–63.

In the present case, the plaintiffs failed to appeal the commission's decision granting the defendants a wetlands permit in 2006 although, as abutting landowners, they were aggrieved by the decision pursuant to § 22a-43 (a). The defendants argue that the plaintiffs' present action challenging the permit is "nothing more than a thinly veiled collateral attack on the [December] 2006 approval." In finding that it lacked subject matter jurisdiction, the court agreed with the defendants and concluded that the plaintiffs simply were seeking to render the 2006 permit decision ineffective by instituting a separate civil action. Although the plaintiffs argue, instead, that they are appealing *the extension* of the defendants' wetlands permit as opposed to the commis-

sion's original permit approval in 2006, they also contend that because injunctive relief from the commission's decision is necessary to prevent immediate and irreparable harm to them, exhaustion does not apply to the case at hand. Specifically, the plaintiffs assert that construction on the defendants' property, pursuant to the permit, would "cause irreparable harm in a regulated wetland area affecting water runoff and drainage to [the plaintiffs'] abutting property." These claims visibly attack *the substance* of the wetlands permit, which, as the court pointed out, the plaintiffs could have done in 2006 by appealing the approval pursuant to both §§ 22a-43 (a) and 8-8 (b).

By application of the relevant statutes, the plaintiffs should have filed their appeal with the Superior Court no later than December 30, 2006, fifteen days after publication of the commission's decision. Based upon our review of the pleadings, transcripts, and the record, we agree that the present action constitutes nothing more than an attempt by the plaintiffs to attack collaterally the substance of the defendants' 2006 permit. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 104, 828 A.2d 31 (2003) ("[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. We note that [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and *realistically*, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." [Citations omitted; emphasis in original; internal quotation marks omitted.]).

Much like this court held in *Caltabiano*, the plaintiffs' claim of irreparable harm should have been raised in a direct appeal from the commission's permit approval in 2006. Because the plaintiffs failed to appeal the 2006 permit approval to the Superior Court within fifteen days of publication, as provided for by statute, the plaintiffs failed to exhaust their administrative remedies. The plaintiffs may not now commence an action that should have been filed in 2006 by claiming that they are attacking the permit extension—an argument we address in the second part of this opinion—and not the original approval of the wetlands permit. The court thus properly concluded that the plaintiffs' failure to exhaust their available remedies deprived it of subject matter jurisdiction to address the validity of the defendants' wetlands permit.

II

The plaintiffs next claim that the court erroneously concluded that the wetlands permit properly was extended by operation of law. Specifically, they argue that: (1) the court's reliance on § 22a-42a (g) was mis-

placed and that notice of the permit extension was required before the extension was granted; and (2) the expiration date of the permit was not tolled because of the defendants' appeal from the denial of their two requested variances. After considering all of the plaintiffs' arguments related to this claim, we conclude it has no merit.

The following additional facts are relevant to the resolution of the plaintiffs' second claim. While the defendants' appeal from the denial of the requested variances was pending in the Superior Court, the defendants' counsel wrote to the commission on November 21, 2008, alerting it to the fact that the defendants were in the process of appealing a variance denial and that, pursuant to *Fromer* v. *Two Hundred Post Associates*, 32 Conn. App. 799, 631 A.2d 347 (1993), the defendants were requesting an extension of the wetlands permit. After the petition filed by Megan Bochanis and John Bochanis for certification to appeal to this court from the Superior Court's judgment sustaining the defendants' zoning appeal was denied on October 14, 2009, the defendants' counsel wrote to the commission again requesting that, pursuant to *Fromer*, it extend the defendants' permit until October 14, 2011. On November 16, 2009, the commission sent the defendants' counsel a letter confirming that "[b]ased upon past practice on similar permit expiration issues," the permit would be extended until October 14, 2011.

A

The plaintiffs claim that the court's reliance on § 22a-42a (g) was misplaced because subsection (g) did not exist in 2006, when the permit initially was approved by the commission. Instead, the plaintiffs assert, the court should have applied § 22a-42a (d) (1) and (2).[13] The plaintiffs also contend that regardless of which statute applies, notice of the commission's action was required before the permit extension was approved. We disagree.

On July 2, 2009, the General Assembly enacted No. 01-181 of the Public Acts, adding subsection (g) to § 22a-42a, which provided: "Notwithstanding the provisions of subdivision (2) of subsection (d) of this section, any permit issued under this section during the period from July 1, 2006, to July 1, 2009, inclusive, shall expire not less than six years after the date of such approval. Any such permit shall be renewed upon request of the permit holder unless the agency finds that there has been a substantial change in circumstances that requires a new permit application or an enforcement action has been undertaken with regard to the regulated activity for which the permit was issued, provided no such permit shall be valid for more than eleven years."[14]

Because we must examine the language of § 22a-42a (g), we note at the outset that: "The process of statutory

interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

The original permit, which was issued in December, 2006, falls directly within the time frame specified in subsection (g) of § 22a-42a, which extended, by operation of law, the permit expiration date to "not less than six years after the date of such approval." The fact that subsection (g) did not exist at the time of the original permit approval in 2006 is irrelevant as the statute clearly states that permits issued "from July 1, 2006, to July 1, 2009" would be extended. Such language is unambiguous and is not susceptible to more than one reasonable interpretation.

Although the plaintiffs assert, instead, that § 22a-42a (d) (1) and (2) is applicable to the present dispute, the plain language of subsections (d) and (g) negates the plaintiffs' argument. Subsection (d) (1) states that it applies to the "granting, denying or limiting" of a permit and does not refer to permit extensions in any capacity. On the other hand, subsection (g) explicitly states that permits falling within the specified time frame will be extended "[n]otwithstanding the provisions of subdivision (2) of subsection (d) of this section . . . ." Based on our plain reading of § 22a-42a, subsection (g) clearly applies to permit extensions by extending permits, within the specified time period, by operation of law. If the General Assembly had intended to encompass subsection (d) (1) and (2) into the provisions of subsection (g), it would have explicitly done so. As a general rule, "if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 481, 668 A.2d 682 (1995). Reading § 22a-42a differently would not give

effect to the apparent intent of the legislature based upon a plain reading of the statute.

The plaintiffs also claim that notice of the commission's action was required before the permit was extended. This argument must also fail as there is nothing in the statute to indicate that either actual or constructive notice is required before the permit is extended by operation of law. See *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133, 717 A.2d 747 (1998) ("The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." [Citations omitted; internal quotation marks omitted.]).

## B

The plaintiffs next claim that the court improperly concluded that the permit's expiration date was tolled because of the defendants' appeal from the denial of two requested variances. We disagree.

This court's holdings in both *Fromer* v. *Two Hundred Post Associates*, supra, 32 Conn. App. 799, and *Dean-Moss Family Ltd. Partnership* v. *Five Mile River Works, Inc.*, 130 Conn. App. 363, 23 A.3d 745 (2011) (*Dean-Moss*), are instructive as to this final claim of the plaintiffs'. In *Fromer*, we held that a permit to conduct a regulated activity runs with the land and not the applicant. We also went on to conclude that where a valid permit was issued to conduct a regulated activity within a specified time period and an appeal from the granting of a permit was taken, the time period within which to conduct the regulated activity was tolled until all litigation had been completed. *Fromer* v. *Two Hundred Post Associates*, supra, 802. Importantly, in *Dean-Moss*, we held that the rationale in *Fromer* tolling a permit's expiration in the context of administrative appeals also applied to actions seeking injunctive relief. In so finding, we recognized that the defendant's actions in *Dean-Moss* opposing the granting of the plaintiff's coastal site plan applications and its subsequent actions challenging the validity of a related parking easement were the cause of the lapse of time that resulted in the expiration of those approvals. *Dean-Moss*, supra, 375.

Notwithstanding the fact that the permit in the present case was extended by operation of law pursuant

to the plain meaning of § 22a-42a (g), the court properly concluded that the permit's expiration date was also tolled pursuant to *Fromer* and *Dean-Moss*. The defendants' wetlands permit became effective on December 15, 2006, and was originally set to expire on December 15, 2008. The petition filed by Megan Bochanis and John Bochanis for certification to appeal to this court from the Superior Court's judgment sustaining the defendants' zoning appeal was not denied by this court until October 14, 2009. Much like this court reasoned in *Fromer*, if the defendants had begun construction during the pendency of their zoning appeal to the Superior Court, their actions might have been considered "reckless conduct" because the defendants' permit—like the permit at issue in *Fromer*—was conditioned on obtaining the necessary zoning approvals, permits, or variances *before* any work could begin.[15] Furthermore, if the defendants had disturbed the wetlands and then lost their zoning appeal, they would have had to restore the wetlands.[16]

The plaintiffs argue that *Fromer* is distinguishable because the defendants' wetlands permit, unlike the permit at issue in *Fromer*, clearly states that a court appeal will not automatically extend the permit. This language, the plaintiffs argue, is evidence that the commission and board "explicitly contemplated the fact that a court action may delay work in accordance with the wetlands permit." Agreeing with the plaintiffs' argument would require us to not only ignore the language of § 22a-42a (g) but also the holdings of both *Fromer* and *Dean-Moss*. This we cannot do.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We refer in this opinion to Frances Sweeney and Kevin Sweeney collectively as the defendants, and to them individually by name. We note that each Sweeney occupies the same legal position as the other as owners of the property involved.

On March 28, 2012, the commission and the board filed a motion to dismiss. On March 29, 2012, the defendants filed a motion to dismiss in which they joined that prior motion. Accordingly, the court treated the defendants as being in the same legal position as the commission and the board for the purposes of adjudicating the motions to dismiss.

[2] Although the plaintiffs briefed the second issue as two separate issues, namely, that the court erroneously concluded that the permit was properly renewed and that the permit was extended based upon the defendants' appeal from the denial of two requested variances, we address both issues together as they are related to the overriding issue of whether the defendants' wetlands permit was properly extended.

[3] General Statutes § 22a-42a was amended by No. 09-181 of the Public Acts, which added subsection (g). Hereinafter, unless otherwise indicated, all references to § 22a-42a in this opinion are to the 2010 supplement to the statute.

[4] We note at the outset that the plaintiffs argue on appeal that they are contesting only the extension of the defendants' wetlands permit and not, as the defendants claim, the substance of the permit as granted in 2006 and that therefore, the court did have subject matter jurisdiction. On the basis of our review we conclude that the plaintiffs are contesting both the validity of the defendants' wetlands permit as well as the propriety of the permit extension as a distinct procedural matter. While we conclude that the court did not have subject matter jurisdiction to address the *substance* of the wetlands permit itself due to the plaintiffs' failure to exhaust their administra-

tive remedies, the court did have jurisdiction to address the plaintiffs' claim concerning the permit extension as a separate matter. Therefore, to the extent that the plaintiffs *were* contesting the permit extension, we also review that claim on appeal.

[5] John McMillan and Lori McMillan also own land abutting the defendants' property and were added as plaintiffs in the present action.

[6] General Statutes (Supp. 2010) § 22a-42a (c) (1) provides in relevant part: "The inland wetlands agency shall not hold a public hearing on such application unless the inland wetlands agency determines that the proposed activity may have a significant impact on wetlands or watercourses, a petition signed by at least twenty-five persons who are eighteen years of age or older and who reside in the municipality in which the regulated activity is proposed, requesting a hearing is filed with the agency not later than fourteen days after the date of receipt of such application, or the agency finds that a public hearing regarding such application would be in the public interest. An inland wetlands agency may issue a permit without a public hearing provided no petition provided for in this subsection is filed with the agency on or before the fourteenth day after the date of receipt of the application. . . ."

[7] The commission approved the permit with conditions and notice of such conditional approval was included in the Fairfield Citizen News. The commission had the authority to grant the permit only upon the defendants' fulfillment of certain conditions pursuant to General Statutes (Supp. 2010) § 22a-42a (d) (1), which provides, in relevant part: "In granting a permit the inland wetlands agency, or its agent, may grant the application as filed or grant it upon other terms, conditions, limitations or modifications of the regulated activity which are designed to carry out the policy of sections 22a-36 to 22a-45, inclusive. . . ."

Conditional approvals of wetlands permit applications have also been held permissible by this court as well as by our Supreme Court. See *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 42, 949 A.2d 569 (2008) (listing cases from this court and our Supreme Court involving conditional approvals). We note that the conditional nature of the permit approval does not affect the plaintiffs' exhaustion argument. See *Canterbury* v. *Deojay*, 114 Conn. App. 695, 712–14, 971 A.2d 70 (2009) (holding that because defendants had failed to appeal one of wetlands permit conditions within time limit delineated in General Statutes § 8.8 [b], they had failed to exhaust their administrative remedies, which rendered commission's action final).

[8] Practice Book § 10-33 provides: "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action."

[9] A motion to dismiss is the appropriate vehicle for challenging a court's lack of subject matter jurisdiction pursuant to Practice Book § 10-30 (a), which provides in relevant part: "A motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . ."

[10] The plaintiffs argue that they also fall within a second exception to the exhaustion doctrine because the commission's action extending the permit's expiration date was void for lack of notice. See *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 101, 616 A.2d 793 (1992) ("[w]e have thus regarded a failure to provide the required published notice as a subject matter jurisdictional defect rendering the zoning action void"). Because we conclude, in the second part of this opinion, that notice of the permit extension was not required by statute, we need not address this argument with respect to the plaintiffs' first claim.

[11] We use the current revision of General Statutes § 8-8 (b) for the purposes of simplicity and ease of reference in this opinion. General Statutes (Rev. to 2005) § 8-8 (b) provided in relevant part: "Except as provided in subsections (c), (d) and (r) of this section . . . any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. . . ." We note that the fifteen day requirement is unchanged.

[12] General Statutes § 8-8 (o) provides in relevant part: "There shall be no right to further review except to the Appellate Court by certification for review, on the vote of two judges of the Appellate Court so to certify and under such other rules as the judges of the Appellate Court establish. . . ."

[13] General Statutes (Supp. 2010) § 22a-42a (d) (1) provides in relevant part:

"The applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision . . . ."

General Statutes (Supp. 2010) § 22a-42a (d) (2) provides in relevant part: "Any permit issued under this section for any other activity shall be valid for not less than two years and not more than five years. . . ."

[14] General Statutes § 22a-42a (g) provides: "Notwithstanding the provisions of subdivision (2) of subsection (d) of this section, any permit issued under this section prior to July 1, 2011, that has not expired prior to May 9, 2011, shall expire not less than nine years after the date of such approval. Any such permit shall be renewed upon request of the permit holder unless the agency finds that there has been a substantial change in circumstances that requires a new permit application or an enforcement action has been undertaken with regard to the regulated activity for which the permit was issued, provided no such permit shall be valid for more than fourteen years."

[15] Paragraph eleven of the standard conditions of approval for the defendants' wetlands permit states: "If the activity authorized by the inland wetlands permit also involves activity or a project that requires zoning or subdivision approval, special permit, variance, or special exception, no work pursuant to the wetlands permit may begin until such approval is obtained."

[16] General Statutes § 22a-44 (b) provides in relevant part: "The Superior Court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action. All penalties collected pursuant to this section shall be used solely by the Commissioner of Energy and Environmental Protection (1) to restore the affected wetlands or watercourses to their condition prior to the violation, wherever possible, (2) to restore other degraded wetlands or watercourses, (3) to inventory or index wetlands and watercourses of the state, or (4) to implement a comprehensive training program for inland wetlands agency members."